Good morning, your honors. May it please the court, Daniel Hayward on behalf of the appellant Frank Wright. Mr. Wright is a resident of the Incline Village General Improvement District, referred to as ICID, located adjacent to Lake Tahoe in Nevada. Now just by way of brief history, in 1968, a development company Counsel, if I can apologize for interrupting so early, but I think we've all read this record. And I guess what I struggle with is, in order for you to be successful, don't you have to show that this is a public forum? That would be certainly beneficial, your honor, and the easiest way in which What's the other way to get there, a limited public forum? Your honor, even if this is a non-public forum, with a reduced test for IBGTME, which is of course content neutrality and reasonableness, the fact remains that here you do have a restriction based on the identity of the speaker. That is, any person who does not have ownership of a pre-1968 parcel. But that's a little different than restricting the speech. That's restricting access to anybody, whether they want to speak or not. That's not the same thing, is it? Well, I think that it is, in a sense, your honor. In the Warren v. Fairfax County case, I believe that was out in Virginia in the Fourth Circuit, there you had a similar situation where someone wanted to protest on a relatively small grassy lawn in front of a county building. The county took the position that only county residents who pay for that parcel. But that case is quite different, is it not? I used to do a lot of real estate law. I'm very familiar with CC&Rs and all that sort of thing. And here you've got a situation where this area, at least insofar as the record is concerned, has always been a private breach, if you will. Only those people who owned property, at least as of 1968, within this defined area were permitted to be there. The county, not the county, but the district has permitted certain other people, and you've developed a record on this as to who people came in, AYSO people, some adults, and so on and so on. But it was always restricted. So far as I can tell in the record, and correct me if I'm wrong, I see no instance where just members of the public willy-nilly can come in there to speak or do anything else. Is that incorrect? I think you're correct insofar as your statement goes, that no random member of the public without authorization can appear there during the summer months, during the hours in which it is maintained, during the daylight hours. And is it not fair to say that from the inception of, I guess maybe even prior to the formation of the district, based upon the CCNRs, there was always a regulation of who was permitted to use these locations. Right now we're focused on the beach areas. But isn't that always true in this record? And I'll canter, Your Honor. I really can't answer that as to the situation way back in the late 60s and 70s. Okay. Well, let's reverse the question then. Do you have any evidence that shows that members of the public in general were ever permitted to use that part of the beach without restriction? Is there anything in the record that shows that? Well, there is, Your Honor, in the sense that... I'm not talking about Native Americans that were there before the prehistory. Of course not, Your Honor. In the non-summer months, there is no restriction whatsoever on who uses these beaches. There's no fence along the sand. Anyone can wander along. It isn't a thoroughfare along the beach in that sense, unless there's an employee there to stop you. There are some signs. They used to say private beach. Now they say restricted access. There's a gate, which is not maintained, of course, in the late evening, of course, or in the non-summer months. So, yes, there is, as a practical matter, open access to anybody. Can you have a private beach as a general matter under Nevada law? That's a complicated question. If this beach that we're talking about was owned by one individual or a married couple, could they restrict access to the beach? If it were owned by one individual or a married couple? I would have to say I think they could, so long as, well, I hearken to the Amtrak case, where they said that although it is chartered as a private company, the First Amendment applies there. So I'm not 100 percent certain, Your Honor. But I think there could be a situation where they routinely allowed people to use that as sort of a public commons, if you will. So I'm talking about a private, under Nevada law, can a single owner of property, which goes down to the waterline, say this is a private beach, it's my beach, and I will decide who can have access to the beach? I believe that is the case, Your Honor. Okay. I don't think, I don't believe the public trust type arguments that you might have in California apply in Nevada to my knowledge. My second question is, could a private owner who transferred that private beach to a special purpose district include in the deed restrictions a maintenance of it as a private beach? Would they have the right to include that in a deed restriction? I think a private party would have the right to put that in a deed restriction, yes, Your Honor. Okay. However, the situation here is we were originally challenging the deed restriction, and then ---- we later made the tactical decision not to do that for various practical and economic reasons, Your Honor. We are, however, challenging the ability of the government, and this is a government entity formed under ---- It's a special purpose district. It's a special purpose district. I don't think there's any dispute that it's a government enough entity to be a subject here to First Amendment concerns. We're challenging the ability of that entity to enforce that deed restriction against members not only in its own community, the annexed people from Crystal Bay like Mr. Wright, but the public at large. And that deed restriction and the enforcement of that deed restriction has to ---- is trumped by First Amendment concerns. If it's a public forum. Yeah. I still maintain, Your Honor, that even under a content neutral reasonableness test for a nonpublic forum, that because you are excluding an entire class of people in a relatively arbitrary manner, I might add, that you are ---- you're not content neutral. Anything a certain class of people ---- Can you ---- I'm sorry. Go ahead, Jeff. Can I ---- or could you come into my chambers and make a speech? No, Your Honor. It's public property. I mean, there's no two ways about it, but it's not a public forum. Absolutely. It's government-owned, and government-owned is not the end of the hunt or the end of the question. I know, but it's not a public forum. It's my chambers. That is correct. And that would be reasonable in light of the nature of that forum or lack of a forum, your chambers. Now, has this place ever been used as a public forum? You know, the word forum means a place of speaking, making speeches. Not for ---- not that I ---- there's nothing in the record about making speeches there, Your Honor. Well, I wouldn't like that. I would note that there is more to free speech than standing on a soapbox and making speeches. I understand that. And waving banners and shouting. I understand that, but still, conveying ideas, if you'd like it that way. There is ---- B. Epstein, a trustee of the Board, testified, and it is in the record, Your Honor, I believe at 68 to 70. That to her knowledge, no one was ever precluded from saying anything or communicating any particular message on that beach among the people that were allowed in. Now, you connect that to the fact that the body of people that have been allowed in, despite this deed restriction included in this deed by which the land was conveyed for $10 by the development company to Ivgid back in the day, that deed restriction has been routinely ignored. The general manager, Bill Horn of Ivgid, admitted that employees who work more than 20 hours a week are allowed free access. But their kids definitely can allow, for example, if he chooses, to allow former clerks to come into his chambers? Of course he can, Your Honor. I think that's very distinguishable. Isn't the case governed by ACLU v. Las Vegas, the 2003 case from this circuit, about what constitutes a traditional public forum? Oh, I think the laws enunciated in that case may apply, but — But doesn't it say that set forth a three-factor test for determining whether something is a traditional public forum? That is correct, Your Honor. Including the actual use of the property, the property's physical characteristics and its traditional or historical use? That is the case. And isn't Judge Duffy correct in saying that this beach has never been considered a public forum? I'm having trouble with the notion that it's never been considered a public forum when that is based solely upon this exclusionary practice, which is the first one. Was it a public forum before the beach was transferred to the district? I have no idea. Is there anything in the record that you can point to that would establish that it has some history of being a public forum? Only in the sense that members of this community, their guests, their tenants, any employee of IVGID, apparently people who sign up for classes, basically anybody IVGID deigns to grant access. How's that different from a private property owner saying, this is my private beach, but someone walks up and says, can I camp out on your beach or have a picnic on your beach? And the owner says, sure, you seem like a nice person. Go ahead. Because here they purport to rely upon this deed restriction to exclude others. And it's not borne out in practice. But there's a difference between that, is there not, counsel, and the issue of the First Amendment and free speech. You know, you've done a good job of showing illustrations of where people have been allowed access. But the gravamen of what they do has nothing to do with speech. I mean, they've got the play and they've got AYSO and they've got card games and stuff like that. But the reality is, as Judge Hawkins pointed out in the VACOU case, and indeed there are a lot of factors that the Supreme Court considered. And as I look at them, I just don't see it. I don't get where this is a public forum. So help me with this. Let's assume arguendo. This is not a public forum. It is arguably a limited public forum. Does this qualify for a limited public forum analysis under Cornelius, for example? Well, I think that both Policy and Procedure 136 and Ordinance 7 in general in excluding an even under that analysis, Your Honor, is patently unreasonable. Okay, let's go to the specifics here. Under Alpha Delta Chi Delta Chapter versus Reed, which is one of our cases, we said that the test for determining whether speech restriction in a limited public forum is constitutional is whether, one, it was reasonable in light of the purpose of the forum and viewpoint neutral. Well, let's take the first point. Isn't what this district is doing reasonable in light of the purpose of the district, which is to keep and maintain this area that's included within the confines of the CC&Rs, manage it reasonably. They allow some exceptions for people to come in as guests and hotel guests or whatever. And so far as I can tell, I have seen nothing in the record, and I'd like you to point me to anything to the contrary where the Board or Rule 136 or Policy 136 or Ordinance 7 says anything expressly, saying when you're on the beach, you can't talk about X. Is there anything like that? According to the testimony of the IVGAD personnel, that is in the record. Under Policy 136, no one can engage in First Amendment activity inside this park with a beach. Well, it's freedom of association. That's a First Amendment activity, isn't it? Aren't they there all the time, associating with one another? I do agree, Your Honor. And this is a problem, though, with the facially, with Policy Procedure 136. It's not posted. Someone who doesn't live there and isn't at all dialed into this argument would drive up to this beach and think they have no ability to come in, when in fact there is this secret policy that is not advertised at all or revealed to the public. Do you agree, for purposes of – I mean, the three of us have got to weigh this afterwards. Being – since we've looked at this carefully, do you agree that you just don't qualify as a public forum, that we have to look at this under limited public forum analysis, if at all? Do you agree with that? I do not, Your Honor. Okay. Now, why is this a public forum? What are the criteria that you want us to rely upon to show that this is a public forum? Well, the third criteria is traditional or historic use not only of the property in question, which I would submit is as a park. It's basically a park. It's a park with a beach. Well, it's not just a park. It's a park with beaches that has been since – at least for purposes of this record – since 1968, has been carefully governed under the auspices of some CC&Rs which the district board purports to enforce. Isn't that fair? But it's not just a park. It's not like a public park that was always a public park or a public commons. Well, Your Honor, what I was going to say is you look not only at the property in question, but also other similar properties. And that's what the Court did in the Warren case. That's what they did in the Layden versus Connecticut case. Those were actual public parks. They had traditionally been used as public parks. And I don't see anything in the record here showing that this beach area was ever so used. In the Layden versus Connecticut case, Your Honor – not Connecticut, Town of Greenwich in Connecticut case, Your Honor, that park was reserved – that beach park, much like this one, was reserved for the residents of the municipality. Others were not allowed in. It was just like this, Your Honor. Your time is up. We've taken you over a little bit. We may give you a smidgen of a chance to respond to learned counsel from the district, but we'll hear from the district now. Thank you all. May it please the Court, my name is Steve Baltin. I represent Incline Village General Improvement District. And, Your Honor, the Court – it is clear that in this case that this property has never been used as a public form or a traditional public form in any way. It just never has. Does it qualify as a limited public form from our perspective? Your Honor, I'm not – I don't think that it does. I think it's clearly a non-public form by virtue of the fact of the deed restriction. That's just the way it is. I mean, that deed restriction said it's for recreation purposes, and that's exactly what's happened. That's happened since 1968. It's never been used for any other purpose. I'll tell you what troubles me the most about your side's position on this. If Mr. Wright's declaration is to be credited, he is a candidate for the board. He has run before, and he wants to run again. So this is like a public – it's a campaign, basically. And what he's claiming is that he can't get access to this beach where he would be able to hustle up votes. So let's take it in that context. To the best of your knowledge, and certainly in the record, has Mr. Wright ever sought from the district the names and addresses of all the people that lived within the 1968 boundaries covered by the CC&Rs that have access to the beaches? There's nothing in the record that I've found. Okay. So there may be no indication of that. Has he ever taken out, to your knowledge, radio advertisements or television advertisements in connection with his candidacy? Your Honor, I know that he's run for office, but I didn't follow his campaign. Okay. So I guess that's my only struggle on this. To the best of your knowledge, has anybody else besides Mr. Wright ever claimed that they were denied First Amendment rights by virtue of not being able to go on the beach area? Your Honor, there was a companion case where that issue was raised in the Crowell matter. He asserted the First Amendment. He didn't run for office but is active up there, at least in the community, politically. Okay. So basically you've got two people, no others that you're aware of, that have been complaining about a First Amendment right? That's correct, Your Honor. And as I understand it, the basis of his wanting to run is that he wants people who don't live within the confines of the 1968 CC&Rs to be able to use the beach. Is that basically the gravamen of his political aspiration? Your Honor, I really don't know what his political aspirations are. I do know that he takes that position, that he should have a right to use the beaches for speech. And I think, Your Honor, that was one of the reasons that the board adopted Policy 136, is just to accommodate those individuals who would want to engage in speech in the beach area. And that's one of the reasons. When that was done, when Policy 136 was adopted, since this is a public body, I assume there's no attorney-client privilege that I would be breaching by asking this question. But I gather that's a matter of public record. Was there discussion in the public setting about, well, this might be a limited public forum. We need to provide some reasonable outlet for Mr. Wright. Did that come up? No, Your Honor. That specifically didn't come up. But clearly the idea of it being a public forum, a non-public forum, those two issues were brought up. And those two areas, some of the areas in the district were defined as non-public forums and some were defined as public forums. And that was done, Your Honor, as is the law in Nevada. It must be done before a public hearing in order to adopt an ordinance or regulation that has to be done in front of the public. And was this done as a prophylactic measure to protect against Mr. Wright's impending lawsuit or claims by Mr. Crowell? Your Honor, I don't think that's the case. There had been some discussion over the year prior, a year and a half prior, about the issue, about whether people from Crystal Bay should be allowed to use the beaches. So the board determined in their wisdom to approach the issue and address the issue, and that's what they did. And this was one of the solutions they came up with. The idea that this was a prophylactic measure to deal with the litigation would be incorrect because of the history of this. The history was this issue was studied for some two years prior to the time it was adopted. One other question. I don't mean to monopolize this. It's fine. Of course, a deed restriction in the form of covenants, conditions, and restrictions is usually enforceable, and in this one purportedly by its terms, by other people owning property within the 1968 boundaries. Under Nevada law, are the members of that area still able to enforce the CC&Rs even if the district did nothing? I think they would be able to, Your Honor. It's a covenant that runs with the land. I believe that someone who falls under the province of this ordinance would have that authority under the real property law of the state of Nevada. Okay. So there's no waiver, there's no estoppel, there's no ‑‑ basically they've not been lost by want of enforcement, those rights, private rights? I don't think so, Your Honor. I think it's a good and valid deed restriction, and the trial court, two judges, in fact, as the court is aware, did not determine in any way, shape, or form that deed restriction was in any way invalid. And I appreciate that that doesn't necessarily have any bearing on this case. I'm just thinking outside the box, you know, even if we agreed with your opposing counsel and his client, whether somebody else could come along and block it off as well. I think someone could, Your Honor, try to enforce that unilaterally. A person who owns property that's governed by that deed restriction as is generally the real property law in the area. Would you be good enough to give me a little bit of help? You have to understand I'm a kid from the Bronx. All right? I understand you're a little more than that, Your Honor. Now, let me suggest to you that there's a place called Jones Beach. You ever heard of it? I've not. It's in New York. It's a great big park. The parking area for Jones Beach is separated from the beach by a planting of pansies, and that's all. All right? So if anyone who wanted to make a speech could make a speech in the parking lot, and they could talk to everybody, they wanted to or pass out whatever they wanted to and so on and so forth. Now, I have been to other places where the parking area is a substantial walk from the beach. What's the story with this particular area? Your Honor, the beach property and the parking lots are nearly contiguous. They're a little more than pansies. Is that what you call them? Well, contiguous, Your Honor, they're actually nearly touching the parking lot. You could actually stand in the sidewalks that are adjacent to the parking lot, and that's where the beach property, the grass, if you will, Your Honor, the grass and the sand that goes down to the beach, it starts there. And the trees, they all start right there. So that's one of the reasons that the board adopted the policy that they did, was to give those people an opportunity to reach those who would use the beach. That's why they can give their exercise of First Amendment rights in the area of the parking lot, in the area of adjacent sidewalks, in that area. That's why they did what they did, so that they would be able to reach the specific people they wanted to reach, and that would be the patrons or customers of the area. Now, the beach is a large stretch of white sand, or is it like beaches in the lakes in the east, where the grass and the rocks and everything goes right down to the water? And some years, there is mud there. And when I say some years, because in some years, there's a drought. Now, I don't know whether you folks have that. We, in fact, do have that problem, Your Honor. Sometimes the beach that actually touches the water is larger in some years than others, depending upon what the winter's been like. A big winter, you'll have less beach. But I think what Your Honor's asking, I think perhaps this particular beach area is similar to what you have on the east coast of New York. It's just not sand and water. In fact, there's volleyballs. There's bocce courts. There's a swimming pool. There's those type of recreational areas in that. I'm with you now. All right. All right. Thank you. Your Honor. The lake is fed by snowmelt? Yes, Your Honor. It's 100 percent fed by snowmelt. Lake Tahoe is. There's no river that runs into it? There are tributaries and creeks, obviously, that flow from the Tahoe Basin in. And then, of course, it also flows out. And I drink it in Reno. I mean, that's the way the system works. A good winter at Tahoe means watering the grass in Reno. That's how it works in the Tahoe Basin. Your Honor, I think the court has a, if it doesn't have any further questions, I think clearly that both Ordinance 7 and Policy 136 pass constitutional muster in this case. They simply, this is unique in many ways, but ACLU versus the City of Las Vegas controls and the actual use that this has. The physical characteristic, as this Court is aware, it's different. I mean, there's kiosks, there's gates. It has never been open to the public. There's a key system, if you will, Your Honor. And actually, Ordinance 7 has nothing to do with speech, zero to do with speech. It just has to do with how people get in and out and how they can honor that deed restriction. Are you aware of anything either in Ordinance 7 or Policy 136 or anything else or in the deed restrictions that specifically attempts to enjoin any speech or kind of speech? None, Your Honor. In fact, ordinance or Policy 136 is specifically neutral in that regard. It is, if you want to, if Your Honor wants to go up to that beach and make a speech, all he has to do is go up to the kiosk and say, I want to exercise my First Amendment rights. And they are released at the gate to do that. They're also given a copy of the ordinance if they want one, and that's it. And that ordinance says nothing in any way, shape, or form does it limit the content of that speech in any way. It just has to. But from your perspective, it's clearly viewpoint neutral. It is absolutely 100 percent viewpoint neutral, and that's what the Board wanted, and that's what the Board passed. And, Your Honor, there has been an equal protection claim. We think the equal protection claim is subsumed in the First Amendment. I didn't hear that argued by your opponent. That's right. Thank you, Your Honor, for your time. Thank you very much. We'll give you a minute to respond, counsel. As you walk up, is it your position that this beach should be open to anyone who wants to exercise their First Amendment rights? It is, Your Honor. I don't think that a government entity or Occupy Reno could camp out there. Well, there could be reasonable time, place, and manner restrictions, certainly, Your Honor. The Islamic Brotherhood could hold the convention there? I don't think we can stop the Baptists or the Islamic Brotherhood, Your Honor. We could, of course, have a content neutral, viewpoint neutral, time, place, and manner restriction, but a total ban on speech. I would note a total ban under Policy and Procedure 136, even by those who own the Pre-68 parcels, are not supposed to engage in this undefined First Amendment activity on the beach under this Policy and Procedure. This strikes me, though, as a way, an indirect way for people who don't live within the pre-1968 boundaries to get access to the beach. Isn't that what this is really all about? It's not, Your Honor. Mr. Wright is my client. Mr. Wright is a political candidate, has been, will be. I understand that, but I just, I'm having difficulties seeing that he gets up in the I imagine he has a specific objective with respect to being able to use the beach like the people outside the 1968 boundaries probably generally do. Isn't that what's really involved here? I candidly don't think that is really what's involved here, at least with respect to Mr. Wright. Okay. He doesn't want to go lay on a towel. I understand. He wants to go talk to people, converse. He can't even speak to people. The Epstein explained he can't go to the beach and say quietly, excuse me, I'm Frank Wright. I'm running for office. He cannot do that under Policy Procedure 136. There's never been a board member, Ms. Epstein testified, to her knowledge, from the annexed part or the demerged parcels from Crystal Bay. All the board members have been from Inclined Village. The original, more numerous parcels, those folks can go to the beach and are not exposed to arguments like Mr. Wright's. To the contrary, it's a very dangerous situation, perhaps not in this limited sense, but a ruling from this Court could have broad reaching implications on maybe more important matters than local politics in Inclined Village. Okay. Well, thank you both for your arguments. It's a very interesting case, and we respect the rights of the parties, and we will do our best to do justice. Thank you. The case just argued is submitted.
judges: Duffy, Hawkins, Smith